FILED
2014 Aug-04  AM 10:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| EMMA JEAN TOLBERT, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 5:13-CV-1864-CLS |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF REMAND

Claimant, Emma Jean Tolbert, commenced this action on October 8, 2013, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits. Claimant also filed a motion to remand the case to the Commissioner under Sentence Six of 42 U.S.C. § 405(g).[1] For the reasons stated herein, the court finds that claimant's motion to remand is due to be granted.

Claimant asserts that the Commissioner should remand her claim pursuant to Sentence Six of 42 U.S.C. § 405(g), for consideration of a report by Alan D. Blotcky, Ph.D., a clinical psychologist who examined her on March 24, 2014. "Sentence six

---

[1] Doc. no. 14.

remands are 'available when evidence not presented to the Commissioner at any stage of the administrative process requires further review.'" *Poellnitz v. Astrue,* 349 F. App'x 500, 504 (11th Cir. 2009) (quoting *Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1267 (11th Cir. 2007)).

> To be entitled to remand to the Commissioner, the claimant must show that (1) new, non-cumulative evidence exists; (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result; and (3) good cause exists for the claimant's failure to submit the evidence at the appropriate administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). However, "not every discovery of new evidence, even if relevant and probative, will justify a remand to the [Commissioner], for some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing." *Id*. at 876 (internal quotation marks omitted). Accordingly, sentence six encompasses only those instances in which "the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Ingram*, 496 F.3d at 1267 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 2664, 110 L. Ed.2d 563 (1990)).

*Carson v. Commissioner of Social Security,* 373 F. App'x 986, 988 (11th Cir. 2010) (bracketed alteration supplied).[2]

Dr. Blotcky's mental status examination revealed that claimant demonstrated logical and orderly thinking, concrete and simplistic thought processes, sparse and slow speech, and poor abstract thinking. Claimant's memory functioning was intact

---

[2] In contrast, remand is appropriate pursuant to Sentence Four of § 405(g) for consideration of evidence presented to, and considered by, the Appeals Council during the administrative proceedings. *Smith v. Astrue,* 272 F. App'x 789, 802 (11th Cir. 2008). A claimant does not have to satisfy the good cause requirement in order to obtain a remand pursuant to Sentence Four. *Id.*

but somewhat vague, and she seemed depressed and anxious, with restricted affect, tired and worn appearance, and teariness.  Many of claimant's verbalizations were morbid in content, and her energy level was low, but she was not psychotic, and she did not have a thought disorder.  Although claimant's insight was limited, her judgment was grossly intact.[3]  Dr. Blotcky administered WAIS-IV intelligence testing, and claimant attained a Verbal Comprehension Index of 70, a Perceptual Reasoning Index of 77, a Working Memory Index of 77, a Processing Speed Index of 65, and a Full Scale IQ score of 67, placing claimant in the mildly retarded range of intellectual functioning.[4]  He assessed claimant with dysthymic disorder, generalized anxiety disorder, a history of physical and sexual abuse, mild mental retardation, multiple medical problems, and a GAF score of 48, indicating serious symptoms.[5]  Dr. Blotcky also completed a Medical Source Opinion Form (Mental), on which he indicated that claimant had moderate impairment of her abilities to: respond appropriately to co-workers; use judgment in simple, one- or two-step, work related decisions; understand, remember, and carry out simple, one- or two-step instructions; and maintain activities of daily living.  Claimant had marked impairment of her abilities to:  respond appropriately to supervisors, customers, and other

---

[3] Doc. no. 13 (Motion to Remand), Exhibit 1 (Report of Dr. Alan D. Blotcky), at ECF 3.

[4] *Id.*

[5] *Id.* at ECF 4.

3

members of the general public; use judgment in detailed or complex work-related decisions; deal with changes in a routine work setting; understand, remember, and carry out detailed or complex instructions; respond to customary work pressures; maintain attention, concentration or pace for periods of at least two hours; and maintain social functioning.[6]  Claimant would not be able to manage benefits in her own best interest.[7]  Dr. Blotcky also completed a Psychological Opinion Re: Ability to Do Work-Related Activities (Mental) form.  He indicated that claimant would have limited but satisfactory ability to:  maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; ask simple questions or request assistance; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; be aware of normal hazards and take normal precautions; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness.  She would have seriously limited ability to:  understand, remember, and carry out very short and simple instructions; make simple work-related decisions; set realistic goals or make plans independently of others; and use public transportation.  She would be unable to meet competitive standards in her ability to:  remember work-like procedures; maintain attention for a two-hour segment; work in coordination with or proximity

---

[6] *Id.* at ECF 6-7.

[7] *Id.* at ECF 7.

to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; deal with normal work stress; understand, remember, and carry out detailed instructions; deal with the stresses of semiskilled and skilled work; interact appropriately with the general public; and travel in unfamiliar places.  The reasons for the restrictions imposed by Dr. Blotcky were claimant's low IQ, dysthymic disorder, and generalized anxiety disorder.[8]  Claimant could be expected to miss more than four days of work each month as a result of her impairments and treatment.[9]  Finally, Dr. Blotcky indicated that claimant's mild mental retardation would have been present during her developmental years prior to age 22.[10]

There can be no reasonable dispute that Dr. Blotcky's report is new and non-cumulative, as it was not generated until March 24, 2014, nearly two years after the ALJ's April 26, 2012 decision, and there is no other similar report of intelligence testing and psychological functioning in the record.

---

[8] *Id.* at ECF 8-9.

[9] Blotcky Report, at ECF 9.

[10] *Id.*

5

Further, the court concludes that the new evidence is material, because there is at least a reasonable possibility that Dr. Blotcky's report would change the administrative result. The ALJ accounted for claimant's depression and anxiety in her residual functional capacity finding by limiting claimant to unskilled work.[11] Even so, the ALJ found that claimant's alleged learning disorder was a non-medically determinable impairment because "[n]o acceptable treating or examining source diagnosed the claimant with a learning disability."[12] Dr. Blotcky, in contrast, assessed claimant with mild mental retardation dating back to her developmental years. A diagnosis of mild mental retardation could reasonably affect both the ALJ's residual functional capacity finding, and, the determination of whether claimant met any of the listings for mental impairments.

The Commissioner points out that there may be questions of the *weight* to be afforded Dr. Blotcky's opinion, considering that he only examined claimant once, the examination was conducted almost two years after the ALJ's decision, and none of claimant's treating providers had previously noted any significant mental impairments. Those determinations should be made in the first instance by the ALJ. The relevant consideration for this court is whether there is a reasonable possibility that the new evidence would change the administrative result. The court concludes

---

[11] Tr. 23.

[12] Tr. 20 (alteration supplied).

6

there is such a possibility, for the reasons stated above.

Finally, the court concludes that claimant has demonstrated good cause for her failure to submit Dr. Blotcky's report at the administrative level. The Eleventh Circuit has held that good cause is present when the evidence in question did not exist during the administrative proceedings. *See Cannon v. Bowen,* 858 F.2d 1541, 1546 (11th Cir. 1988) ("[T]here is good cause for failing to present the evidence because it did not exist at the time of the administrative hearing or the district court proceedings.") (alteration supplied); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) ("[B]ecause this new evidence did not exist at the time of the administrative proceedings Hyde has established good cause for failure to submit the evidence at the administrative level.") (alteration supplied, citations omitted); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986) ("Smith has established good cause for failure to submit the evidence at the administrative level because it did not exist at that time.") (citation omitted); *Caulder*, 791 F.2d at 878 ("We . . . find that Caulder did establish good cause for the failure to submit the evidence at the administrative level because the evidence did not exist at that time. Nonexistence of the evidence at the time of the administrative proceedings may constitute good cause.") (citation omitted).[13] Dr.

---

[13] The Eleventh Circuit has at least twice used the equivocal term "may" in discussing whether the prior non-existence of evidence will constitute good cause for failing to produce the evidence during administrative proceedings. *See Caulder*, 791 F.2d at 878 ("Nonexistence of the evidence at the time of the administrative proceedings *may* constitute good cause.") (emphasis supplied, citation omitted); *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985) ("Good cause

Blotcky's report was not generated until March 24, 2014, almost two years after ALJ's April 26, 2012 administrative decision, and several months after the Appeals Council denied review on August 8, 2013.  Because the report did not exist on either of those dates, claimant has demonstrated good cause for not submitting the report during the administrative proceedings.

In summary, because all requirements for remand have been satisfied,

---

for failing to present evidence earlier *may* exist where, as here, the evidence did not exist at the time of the administrative proceeding.") (citing *Burton v. Heckler*, 724 F.2d 1415, 1418 (9th Cir.1984)) (emphasis supplied).  The Commissioner urges the district court to interpret that language to mean that the prior non-existence of the evidence does not *always* constitute good cause, and, indeed, some district courts have followed that reasoning.  *See, e.g., Harris v. Apfel*, No. Civ.A.98–0953–MJ–G, 1999 WL 33915955, *2 (S.D. Ala. Oct. 19, 1999) ("This language [*i.e.,* "may exist"] contemplates that satisfaction of the good cause requirement on the basis of prior non-existence of the evidence depends on the circumstances; it does not support the plaintiff's proposition that prior non-existence, regardless of the circumstances, establishes good cause.") (alteration supplied).  However, other decisions of the Eleventh Circuit indicate that the Court intended a harder, faster rule.  Most pointedly, the Eleventh Circuit stated the following in an unpublished 2006 decision:

> The district court found that Archer had not shown good cause for the failure to submit the evidence earlier.  The good cause requirement is satisfied when the evidence did not exist at the time of the administrative proceedings. *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir.1988); *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir.1987).  The good cause requirement was designed to avoid the danger of "encouraging claimants to seek after-acquired evidence, and then use such evidence as an unsanctioned 'backdoor' means of appeal." *Milano*, 809 F.2d at 767 (citation omitted).  *Notably, the court stated that the mere non-existence of the evidence did not amount to good cause.  This finding, however, is contrary to this circuit's standard*. *Cannon*, 858 F.2d at 1546.  Thus, it appears that Archer could meet the good-cause requirement.

*Archer v. Commissioner of Social Security*, 176 F. App'x 80, 82 n.3 (11th Cir. 2006) (emphasis supplied). *See also Lipscomb v. Commissioner of Social Security*, 199 F. App'x 903, 907 (11th Cir. 2006) ("The good cause requirement is also satisfied.  The March 2005 questionnaire did not exist at the time of the administrative proceedings.") (citing *Cherry*, 760 F.2d at 1192).

claimant's motion to remand for consideration of Dr. Blotcky's report is GRANTED. This action is REMANDED to the Commissioner of the Social Security Administration for consideration of Dr. Blotcky's consultative report, and for any other necessary proceedings.[14]

The Clerk is directed to close this file.

DONE this 4th day of August, 2014.

_____
United States District Judge

---

[14] Because remand is warranted for consideration of Dr. Blotcky's report, it is not necessary to address any of claimant's other arguments in support of reversal of the Commissioner's decision.